# United States Court of Appeals
## For the First Circuit

No. 25-2054

NATASHA URENA, Administrator of the Estate of Juliana Rodriguez Morel; DANIEL RODRIGUEZ, Administrator of the Estate of Juliana Rodriguez Morel,

Plaintiffs, Appellants,

v.

TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Paul J. Barbadoro, U.S. District Judge]

Before

Barron, Chief Judge,
Gelpí and Aframe, Circuit Judges.

Benjamin T. King, with whom Douglas, Leonard & Garvey, P.C., Megan E. Douglass, and Backus, Meyer & Branch, LLP were on brief, for appellants.

Kathleen F. Adams, with whom Aaron P. Cruz, Christopher J. Seusing, and Wood Smith Henning & Berman LLP were on brief, for appellee.

August 11, 2026

**BARRON**, **Chief Judge**. This case concerns an appeal by the administrators of the estate of Juliana Rodriguez Morel[1] from a judgment on the pleadings in favor of her former employer's insurer. The judgment rested on the determination that her pleadings provided no basis for finding that the insurer's policy with the former employer covered her pregnancy-related discrimination claims against that employer. We affirm.

**I.**

In March 2019, Rodriguez Morel filed an administrative complaint with the New Hampshire Commission for Human Rights and the U.S. Equal Employment Opportunity Commission ("EEOC"). In it, she alleged that her former employer, Mammoth Tech, Inc. ("Mammoth"),[2] discriminated against her on the basis of sex and retaliated against her during her pregnancy.

The New Hampshire Commission notified Mammoth of the administrative complaint that same month. It then dismissed the administrative complaint in October 2020. However, later that month, the EEOC provided Rodriguez Morel with a letter, on which Mammoth was copied, "authorizing" her to sue Mammoth.

---

[1] Rodriguez Morel passed away after filing the suit that underlies this appeal, and the administrators of her estate subsequently became parties to the suit.

[2] Mammoth Tech, Inc., was previously an entity called Credit Adjustments Inc. We refer to it by its current name, Mammoth.

In January 2021, Rodriguez Morel filed suit against Mammoth in the United States District Court for the District of New Hampshire, bringing various claims -- including claims alleging sex- and pregnancy-based discrimination and retaliation -- that were rooted in the company's treatment of her while she was pregnant. The district court entered a default judgment in March 2023 against Mammoth on all of Rodriguez Morel's claims and ordered the company to pay her $303,592.20 in back pay, damages, and attorney's fees.

Nearly two years later, in 2025, Rodriguez Morel filed a different action in the United States District Court for the District of New Hampshire. This time she named as the defendant Travelers Casualty and Surety Company of America ("Travelers"), which was the insurer from which Mammoth had purchased insurance to cover losses stemming from wrongful employment practices.

In that suit, Rodriguez Morel sought a declaratory judgment that Travelers must, under its insurance policy with Mammoth, pay for losses that Mammoth incurred as a result of her January 2021 suit against Mammoth. More specifically, she alleged that Travelers had to "pay on behalf of Mammoth the amount" ordered in the March 2023 judgment.

Days after Rodriguez Morel filed her amended complaint, Travelers filed a motion for judgment on the pleadings. It contended that its insurance policy with Mammoth did not require

it to pay for the March 2023 judgment. That was so, according to Travelers, because Mammoth received constructive notice of Rodriguez Morel's claims under Mammoth's insurance policy before the start of the policy period, which ran from December 4, 2020, to August 5, 2021.

The District Court agreed with Travelers and granted its motion for judgment on the pleadings in September 2025. That ruling is the subject of this appeal.

**II.**

We review the District Court's entry of judgment on the pleadings de novo. Sevelitte v. Guardian Life Ins. Co. of Am., 55 F.4th 71, 79 (1st Cir. 2022). We accept as true the non-moving party's well-pleaded facts and draw all reasonable inferences in their favor. Rezende v. Ocwen Loan Servicing, LLC, 869 F.3d 40, 42 (1st Cir. 2017). Additionally, we review the District Court's interpretation of the insurance policy de novo, applying the substantive law of New Hampshire. Hansen v. Sentry Ins. Co., 756 F.3d 53, 57 (1st Cir. 2014).

**III.**

To explain the basis for the challenge to the District Court's grant of judgment on the pleadings in favor of Travelers, we first need to provide some further background about the insurance policy between Mammoth and Travelers, as well as their dealings over time. We then will explain why the challenge fails.

**A.**

We start with the initial insurance policy executed by Mammoth and Travelers, in which Mammoth purchased "Private Company Directors and Officers Liability" ("PCDOL") insurance. A portion of that policy is titled, "Liability Coverage Terms and Conditions" ("LCTC").

As the name suggests, the LCTC section contains an overarching set of "[t]erms and [c]onditions." It provides that they "apply to all [categories of] liability coverages" purchased by the insured. It further states that "if any provision in the[] [LCTC] is inconsistent or in conflict with the terms and conditions of any particular [category of] liability coverage, such liability coverage's terms, conditions, and limitations will control for purposes of that liability coverage." (Citation modified.)

Among the LCTC's terms and conditions are those set forth in a section titled, "Related Claims." (Citation modified.) That provision states that "All Claims . . . for Related Wrongful Acts will be considered as a single Claim . . . for purposes of [the insurance policy]. All Claims . . . for Related Wrongful Acts will be deemed to have been made at the time the first of such Claims . . . was made . . . ." (Emphases removed.)

The LCTC also provides a definition of "Related Wrongful Act[s]." That provision defines them as "all Wrongful Acts" -- as

defined in the separate subject-matter coverages -- "that have as a common nexus . . . any fact, circumstance, situation, event or decision."[3]

Mammoth later purchased two additional insurance coverages from Travelers -- Fiduciary Liability ("FL") and Employment Practices Liability ("EPL"). Both were executed in separate "endorsements" to the initial insurance policy, which, to repeat, contained the Related Claims provision.

The EPL endorsement provides that Travelers "will pay on behalf of [Mammoth], Loss for any Employment Claim first made during the Policy Period."[4] (Emphases removed.) The EPL endorsement's policy period ran from December 4, 2020, to August 5, 2021. The EPL endorsement provides that an "Employment Claim" is "first made" on "the earliest date that any [qualifying Mammoth] officer first receives written notice of such [Employment] Claim." (Emphases removed.)

---

[3] The insurance policy provides a list of employment practices that the policy deems "wrongful" for purposes of Travelers's liability for payment. Because the parties do not dispute that the conduct underlying Rodriguez Morel's 2019 administrative complaint and January 2021 suit constitute wrongful employment practices, we need not provide that list.

[4] Qualifying losses stemming from "Employment Claims" encompass "[d]efense [e]xpenses and money which . . . [Mammoth] is legally obligated to pay as a result of a[n] [Employment] Claim, including settlements; judgments; back and front pay; compensatory damages; punitive or exemplary damages."

The EPL endorsement also sets forth a definition of an "Employment Claim." That definition includes:

> 1. a written demand for monetary damages or non-monetary relief;
>
> 2. a civil proceeding commenced by service of a complaint or similar pleading;
>
> 3. a criminal proceeding commenced by filing of charges;
>
> 4. a formal administrative or regulatory proceeding commenced by the filing of a notice of charges, formal investigative order, service of summons or similar document, including a proceeding before the Equal Employment Opportunity Commission or any similar governmental agency; provided that in the context of an audit conducted by the Office of Federal Contract Compliance Programs, Employment Claim will be limited to a Notice of Violation or Order to Show Cause or written demand for monetary damages or non-monetary relief;
>
> 5. an arbitration, mediation or similar alternative dispute resolution proceeding if the Insured is obligated to participate in such proceeding or if the Insured agrees to participate in such proceeding, with the Company's written consent, such consent not to be unreasonably withheld; or
>
> 6. a written request to toll or waive a statute of limitations relating to a potential civil or administrative proceeding, against an Insured by or on behalf of or for the benefit of a Claimant, or against an Insured Person serving in an Outside Position by or on behalf of or for the benefit of an Outside Claimant, for a Wrongful Employment Practice; provided that Employment Claim does not include any labor or grievance arbitration or other proceeding pursuant to a collective bargaining agreement.

(Emphases removed.)

Finally, the EPL endorsement contains what the parties refer to as the "Prior and Pending Proceeding" provisions. Those provisions state that Travelers "will not be liable for [l]oss for any [Employment] Claim based upon . . . any" set of circumstances that also "underl[ie] . . . any prior or pending civil, criminal, administrative, or regulatory proceeding . . . against [Mammoth] as of or prior to" December 4, 2015. (Emphases removed.)

**B.**

The administrators' arguments against Travelers allege that the insurance company is liable for the losses attributable to Rodriguez Morel's judgment against Mammoth solely based on the EPL endorsement. And, as the administrators see things, under the EPL endorsement, Rodriquez Morel's 2019 administrative complaint and her January 2021 suit are separate "Employment Claims" that each were "first made" whenever Mammoth received notice of them.[5] So, because Mammoth received notice of the January 2021 suit during Mammoth's EPL policy period, the administrators contend it is clear

[5] The administrators separately contend that "a written demand for monetary damages or non-monetary relief" that was sent from Rodriguez Morel's counsel to Mammoth's counsel itself constitutes an "Employment Claim" that was "first made" within the policy period. They make no separate argument, however, that this "Employment Claim" reveals that the District Court erred in granting judgment on the pleadings to Travelers if its other arguments for our so concluding fail to persuade.

that Travelers is liable for the losses arising from the judgment entered in Rodriguez Morel's favor against Mammoth in the January 2021 suit.

In making that argument, the administrators do not dispute that the January 2021 suit is rooted in the same set of actions by Mammoth as the 2019 administrative complaint, which Mammoth had notice of before the EPL endorsement's policy period began. Nor do the administrators dispute that (1) the 2019 administrative complaint is an "Employment Claim" under the EPL endorsement or (2) the 2019 administrative complaint was "first made" before the policy period for the EPL endorsement.

Thus, the administrators do not dispute that, under the Related Claims provision, the January 2021 suit qualifies as a "Related Claim" to the former "Employment Claim," which was the 2019 administrative complaint and so was "first made" prior to the policy period. As a result, they do not dispute that, if the Related Claims provision applies here, then Travelers was entitled to judgment on the pleadings, just as the District Court determined.

The administrators contend, however, that the Related Claims provision does not apply here. They point out that the EPL endorsement was executed after Mammoth executed the initial policy with Travelers that contained the LCTC section -- and thus, the Related Claims provision itself. In consequence, the

administrators argue, the EPL endorsement supersedes the LCTC portion of the initial policy, or at least its Related Claims provision, thereby rendering the Related Claims provision irrelevant here.

In pressing this argument, the administrators rely on what they contend is the "widely recognized principle of law" that "when a rider or endorsement modifies, qualifies, or restricts the terms of the original policy, the rider or endorsement controls." (Quoting 2 Couch on Insurance § 21:22 (3d ed. 2024).) But the applicable rule is not that categorical.

The New Hampshire Supreme Court has made clear that the rule that "the provisions contained in [an] endorsement or rider will prevail over those contained in the body of the policy" applies only where the two provisions at issue are in "conflict." Santos v. Metro. Prop. & Cas. Ins. Co., 201 A.3d 1243, 1249 (N.H. 2019) (quoting Nat'l Union Fire Ins. Co. v. Lumbermens Mut. Cas. Co., 385 F.3d 47, 55 (1st Cir. 2004)); see 45 C.J.S. Insurance § 607 (2026) (noting that only where "the provisions in the policy proper and those in the rider or endorsement are in conflict" does "the latter control in construing the contract"). So, the administrators must show that there is a basis in the pleadings

for concluding that such a conflict exists. And while they attempt to do so in three ways, we are not persuaded.[6]

**1.**

First, the administrators contend that there is a conflict between the EPL endorsement and the LCTC because the EPL endorsement's definition of "Employment Claim" conflicts with the LCTC's general treatment of "Claim[s]." This is so, they reason, because the LCTC's Related Claims provision could backdate an "Employment Claim." By contrast, they point out, the EPL endorsement does not itself contain a similar related claims provision. Thus, they contend, the LCTC's Related Claims provision requires the backdating of an "Employment Claim" even when the EPL endorsement does not.

[6] We note that the administrators advance an argument that they may intend to be distinct from their contention that the EPL endorsement controls over the LCTC -- or, at least, its Related Claims provision -- because the two conflict with one another. Specifically, they argue that "an internal inconsistency in the provisions of an insurance policy can create an ambiguity" that warrants resolving such ambiguity "against the insurer, who drafted the policy." (Citation modified.) But the administrators do not sufficiently develop any arguments on appeal for there being such an ambiguity-creating inconsistency that are distinct from the arguments that we consider below in addressing whether there is a "conflict" between the Related Claims provision and the EPL endorsement that renders the former inapplicable here. Thus, if the administrators do mean to be making a separate argument based on there being an internal inconsistency that creates an ambiguity, that argument fails for the same reasons that their "conflict"-based argument fails.

But, while the administrators are right that the EPL endorsement provides that Travelers will pay for losses stemming from "any Employment Claim" "first made" by an aggrieved employee during the EPL policy period, the LCTC's Related Claims provision expressly applies to "All Claims." And there is no language in the EPL endorsement that suggests that the LCTC's Related Claims provision means anything other than what it expressly says in that regard.

Nor do the LCTC's overarching provisions suggest otherwise. One such provision does provide that "if any provision in the[] [LCTC] is inconsistent or in conflict with the terms and conditions of any particular [category of] liability coverage, such liability coverage's terms, conditions, and limitations will control for purposes of that liability coverage." (Emphasis omitted.) But, nothing in the EPL endorsement indicates that even though the LCTC's Related Claims provision applies to "All Claims," its "Employment Claims" are not subject to it just as any claim is. We therefore do not see how that provision suggests that the EPL endorsement supersedes the LCTC in that regard.

In other words, by the plain terms of the insurance policy at issue, when read as a whole, if more than one "Employment Claim" has been made within the meaning of the EPL endorsement, then the LCTC's Related Claims provision makes clear that, so long as those claims are "Related," the "first made" date for those

"Employment Claims" is the date that the earliest of those "Related Claims" was made. Therefore, the provisions that the administrators claim conflict in fact easily work together.

**2.**

The administrators separately argue that there is a conflict between the EPL endorsement and the LCTC because the EPL endorsement's Prior and Pending Proceeding provisions conflict with the LCTC's Related Claims provision. Under the EPL endorsement's Prior and Pending Proceeding provisions, the administrators contend, Travelers would be obligated to pay for the judgment against Mammoth that arose from her January 2021 suit -- which, on its own, was noticed during the EPL policy period and independently qualifies as an "Employment Claim" -- even though that suit was "Related" to the 2019 administrative complaint. This is so, according to the administrators, because the Prior and Pending Proceeding provisions create "a 5-year look back window" for "Employment Claims" " with 'prior and pending proceeding' dates long before the coverage effective date . . . starting from December 4, 2015."[7] In contrast, the administrators argue, under the LCTC's Related Claims provision,

[7] The administrators also invoke the EPL endorsement's "Continuity Date," but do not develop an argument about how that date is relevant to the interpretive question in this case, much less one that is distinct from its Prior and Pending Proceeding-based argument.

Mammoth would have "received notice" of the January 2021 suit before the policy period and so Travelers would not be obligated to cover the losses attributable to the judgment stemming from the January 2021 suit.

This purported conflict arises, however, only because the administrators misread the Prior and Pending Proceeding provisions. The text of those provisions provides, in relevant part, that Travelers "will not be liable for [l]oss for any Claim based upon or arising out of, any fact, circumstance, situation, event or Wrongful Act underlying or alleged in any prior or pending civil, criminal, administrative or regulatory proceeding . . . against . . . [Mammoth] as of or prior to" December 4, 2015. (Emphases removed.) As a result, the Prior and Pending Proceeding provisions operate differently from the LCTC's Related Claims provision.

The latter details how the broader policy determines when Mammoth first receives notice of certain "Employment Claims" -- backdating a set of "Employment Claims" that are deemed "Related" to the earliest date that one of those "Employment Claims" was "made." The former provides that Travelers is not obligated to pay for losses in certain circumstances without regard to when or whether an "Employment Claim" was "first made" during the EPL's policy period -- when, as the District Court put it, those losses arise from certain acts "underlying or alleged in a

prior . . . proceeding made before December 4, 2015." In consequence of the different ways the provisions in question operate, the alleged conflict does not exist.

Insofar as the administrators mean to suggest that the alleged conflict arises because the Prior and Pending Proceeding provisions affirmatively create liability for Travelers in the circumstances described -- and so even when the LCTC's Related Claims provision would spare Travelers from such liability -- we also cannot agree. The language of the Prior and Pending Proceeding provisions, by its own plain terms -- that is, by virtue of its use of the phrase "will not be liable" -- creates an exclusion from coverage in the identified circumstances. As the District Court pithily put it, the administrators' argument "essentially relies on the logical fallacy that because a particular statement is true, the converse of that statement must also be true."

This reading is further supported by the location of the operational Prior and Pending Proceeding provision in the EPL endorsement. Specifically, that provision appears within a section titled, "EXCLUSIONS." (Emphasis removed.)

Despite these problems with the administrators' attempts to show that the LCTC's Related Claims provision does not apply here due to the Prior and Pending Proceeding provisions, the administrators contend that we still must conclude that is the

case based on a Texas state appellate court decision -- Gastar Expl., Ltd. v. U.S. Specialty Ins. Co., 412 S.W.3d 577, 583 (Tex. App. 2013). But that out-of-state, intermediate-level court precedent fails to persuade us.

Even assuming it is of no consequence that the provisions at issue in Gastar contained somewhat different language than those at issue here, the court there did not identify a reason for us to conclude that a related claims provision and prior and pending proceeding provisions cannot work together. And, as we have just explained, the LCTC's Related Claims provision and the Prior and Pending Proceeding provisions in the EPL endorsement do not conflict but instead work independently in two different circumstances. So, we fail to see how Gastar gives us a reason to conclude that there is the kind of conflict that the administrators claim.

**3.**

The administrators offer one additional argument that they contend shows that there is a conflict between the LCTC's Related Claims provision and the EPL endorsement's Prior and Pending Proceeding provisions, such that the latter controls and the former is of no relevance here. This argument depends on the fact that one of the EPL endorsement's Prior and Pending Proceeding provisions is titled, "Prior and Pending Proceeding Date," and that this provision identifies that date as "December 4, 2015."

The administrators note that this date precedes the start date for the EPL endorsement's policy period. By contrast, they note, the date given as the "Prior and Proceeding Date" in the prior and pending proceeding provisions in both the PCDOL and FL coverages "matche[s] the inception or coverage effective dates" for those coverages.

The administrators contend that "[t]his new and different treatment for Employment Claims under [the] EPL [endorsement] was presumptively chosen and indicative of the parties' intent." In so asserting, we understand the administrators to be arguing that the differing approach to the prior and pending proceeding dates across the coverages means that the parties intended the EPL endorsement's Prior and Pending Proceeding provisions to work in a way that requires us to conclude that the LCTC's Related Claims provision does not apply here.

But, as we have just explained, the EPL endorsement's Prior and Pending Proceeding provisions can comfortably work together with the LCTC's Related Claims provision. And we fail to see how our reasons for reaching that conclusion are undermined by the fact that the Prior and Pending Proceeding date set forth in the EPL endorsement precedes the start date for that endorsement's policy period. We thus fail to see how that feature of the EPL endorsement's Prior and Pending Proceeding date provides

a basis for our concluding that the LCTC's Related Claims provision has no application in this case.[8]

## IV.

For all these reasons, we **affirm** the District Court's judgment.

[8] The administrators also contend that "Travelers demonstrated ambiguity about the applicability of the related-claims exclusion, by avoiding any discussion of it in its denial letter." But the administrators fail to develop an argument explaining how Travelers's actions could bear on the interpretation of the text of the insurance policy provisions at issue. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).